May it please the court, I'm Katherine Haycock from the North Carolina Attorney General's Office on behalf of the state. This case requires you to revisit existing precedent in SCV and Rose in light of the recently minted government speech doctrine initiated in Johans in 2005 and Sumim in 2009. Specifically, the recently minted government speech doctrine makes clear that where the government sets the overall message to be communicated and approves every word that is disseminated, it is not precluded from relying on the government speech doctrine just because it solicits assistance from third parties in developing specific messages. Here the district court erred for two main reasons. First of all, the district court focused on the wrong person in the communicative process, focusing on the listener instead of the speaker. Secondly, the district court improperly attempts to limit the government speech doctrine to cases like Rust or Johans where the government had an overarching message to advocate or a policy to enforce. With regard to the first reason the district court erred, he focused on the wrong person in the communicative process. The district court relied heavily on this court's pre-Johans Rose opinion from 2004 and said that no one who sees a specialty license plate imprinted with the words choose life would doubt that the owner of that vehicle holds a pro-life viewpoint. So Rose is no longer a good law. That's correct, Your Honor. Under Johans and Sumim. An overrule from your perspective. That's correct, Your Honor. I think SCV and Rose were good law at the time. It was a good analysis, but the Fourth Circuit was the first circuit to consider the government speech doctrine. And that did appear to be the law at the time. You said Johans said specifically Rose is overruled. You're only gonna look at a couple of factors here and that's the end of the ballgame. Literal speaker doesn't mean anything anymore. That's correct, Your Honor. In fact, in Johans, the majority denied the respondent's claim that communications can't be government speech if they're also attributed to someone other than the government. So they expressly rejected the relevancy of the literal speaker in Johans. In the joint appendix at page 84. Would you agree that the literal speaker in this particular case would be the government or do you believe that the literal speaker, assuming that we disagree with you with regard to those factors, would you agree that the literal speaker in this case is in fact the government? I do believe that the maintains control over the plates and approve the message that is to be disseminated. But the government, of course, the purpose behind the specially licensed plates is to promote private speech, correct? No, it's an opportunity for the members of the public that share the same interest as the state to express their affiliation with the government's message. So the government's not encouraging individuals to engage in that? The government is encouraging individuals to promote the government's message. Not their own? No, not private speech. Okay, they're not encouraging them to express their own views. No, they're encouraging the public to adopt the state's message as their own. So it's very important for us to grasp your point that Johans has overruled Rose because I'm not focused to the point that I see that as clearly as you do. So show that language to me in Johan. Tell me what it is that you say overrules Rose, which otherwise is existing precedent in this circuit and we must follow. Johan's focus is exclusively on the level of governmental control and they said because the message set out in the beef advertisements are from beginning to end the message established by the federal government and because the government maintains final approval authority over every word that is disseminated, then it's government speech. Just because the government approves the message and has approval authority over every word that's disseminated, that was the test for government speech in Johan. Isn't that a different type of case? You're dealing with an advertising for beef and really the whole question there is not so much the literal speaker, it really is the control, which is why the court focused on that. That's correct, your honor, and after Johan's, many of the circuits tried to distinguish Johan's on that basis and say, oh, that was just a tax case. That's different from the facts in our test. The governmental control test was the applicable test and said that whether you're dealing with a government program, as in Johan's and in this case, or whether you're dealing with a piece of government property, as in Summa, the same rule applies. So long as the government maintains control over the message and approves every word, then it is government speech. But it's your contention that Johan focused on the single issue of control, but there's language in Johan that it says it expressed no view on the point of the significance of the literal speaker issue. Right, but in Johan's- Right? Did you say right? I agree, but the majority denied the respondent's claim in Johan's that communications cannot be government speech. But it said it's expressing no viewpoint on that. In other words, it's determinist because control issue is there. You don't need to get to this little speaker issue in Johan. Well, I respectfully disagree that since the majority denied the respondent's claim that speech can't be attributed to the government, if it also can be identified with a third party. But we were talking about a compel speech. No, Johan's- Or was it a compel subsidy? No, Johan's did not involve a compelled speech claim. It was not an as-implied challenge. It was simply a facial challenge. Very good. So what kind of case are we dealing with here? This is not a compelled speech or as-applied claim as there was in Woolley versus Maynard from New Hampshire. In this case, private parties volunteer and pay for the opportunity to accept and disseminate the government's message on their license plate. It's strictly a volunteer basis, and there is no compelled speech in the specialty license plate context. Is there compelled salads? I don't believe that it is compelled silence. It's just like our federal stamp program. We've had controversial stamps throughout the years, like win the war or family planning or organize labor proud and free or in God we trust. And members of the United States, citizens can either, if they don't like the message, they can simply not buy the stamps and choose some other stamps. But we don't expect the federal government to publicly publish stamps with opposing viewpoints just because some citizens disagree with the message. So, but Johan did recognize Woodley. Woolley versus Maynard, it did. But in Woolley versus Maynard, that was a compelled speech challenge. And the Supreme Court in Woolley did not hold that the specialty, that the, well, those were standard issue plates. They didn't hold that the standard issue plates implicated private speech rights. And they didn't hold that it wasn't government speech or that the plates were viewpoint discriminatory. It simply held that the Maynards could not be forced to involuntarily carry the government's message and that they didn't have to use their private property as a mobile billboard to carry the state's ideological message. And again, that's not what we're dealing with here. This is strictly a volunteer basis whereby people pay for the opportunity to carry the state's message on display. That's correct. That's correct, Your Honor. If private citizens happen to agree with one of the messages on the state's plates, then they can pay the $25 for the opportunity to display the state's message. So they are exercising some degree of control. It is, Your Honor. It is a form of expressive conduct, but that doesn't change the specialty plate program into a forum requiring viewpoint neutrality. The state is allowed to adopt the specialty plates to advance its own preferred message. So is it part government, part individual? It's not, Your Honor. This is completely government. No part individual at all? It is expressive conduct on the part of the individual, but Johans and Sima make clear that where the government... I'm just asking as a practical matter, is it part government speech and part individual speech? Yes, Your Honor, it is. But again, the task for government speech is simply the control by the government. Now, I've seen these plates in North Carolina, and isn't there some advertising when you do these plates that you basically are telling people you can, this is the way you can express yourself, give your individual feelings about a particular subject, to encourage you to buy these plates, and this would be marketed for people who believe and choose life. This is your opportunity to come out and to individually express yourself. Yes, Judge Wynn, the program is advertised as an opportunity for you to show off your special interest. It also says with one of our specialty plates. So if the private citizen happens to hold this, happen to share the same message as the government, then they can show off their special interest, which they have in common with the state on their specialty plate. And the reason you say it's a governmental interest is because they, as you say, control it, and they write the message, and that alone is enough. That's right, Your Honor. In North Carolina, the legislature... That's for anything. You could do that for anything. As long as you control it and write the message, then it doesn't matter. It becomes government speech, even if your purpose of doing so may have some very limited purpose of satiating a particular viewpoint. That's correct, Your Honor. And as the Supreme Court says in accountability, the government is still accountable to the electorate and the political process for its advocacy. If the public doesn't like the messages that the government espouses, it can come in later and propose some alternative plate or repeal the statute that approves the specialty plate. Where is it going to end? I mean, will there be one out now that will say government, if you want to pass it, says we want schools to be segregated? Is it going to continue to that point? Well, with all due respect, Your Honor, that was the concern of Justice Souter in his dissent in Yohannes. He said the government takes... I'm not talking about his dissent. I want to talk about the majority perspective, Your Honor. Right. I'm not talking about his concern. I'm talking about what the law is, where you're going with this thing, because we've got... You know, and it's interesting the posture of this case, because the issue here really is the legislature not allowing this other group of people to put forth its viewpoint. And somehow, and I know the cases have done it, and Judge Winn thinks differently sometimes, okay? But I don't quite figure this one out. How did this get back? What if the other side said, yeah, you've entitled your viewpoint, but I'm entitled to mine? You can't keep me from saying what I'm supposed to say. So if you've got a pro-choice, I guess is what the other side would be, and pro-life, legislature said pro-life, what this case is about, you've got the pro-choice people says, we want the same thing. We've got 300 people. We want the same plate. And it's really about that more so than the question of whether you can put forth the choose life plate. It's really about a restriction and a suppression of the other view that individuals have. That's the issue here. Well, Your Honor, in response to that, North Carolina is entitled to speak for itself and select the views that it wishes to express, just like any other private but it doesn't do so for individuals. It should do so for the state. I'll bet you there's no poll that talks about which side favors one view or the other. Not sure how it comes out. And I understand you've got legislators who've been elected in the whole bit, but surely this cannot every two or three years, if it flips the other side, we got to keep seeing these plates going back and forth because individuals feel different ways on it. And I mean, isn't that the issue? The denial of the pro-choice folks from having a plate. But Your Honor, again... Because if you did, you wouldn't be here. If you allowed that, you wouldn't be here. That's right. If we had the... That's really what this is about. It's not so much that you want to say, I have a right to say this. It's really, you want to keep the other side from having an opportunity to say the other view. Because this is one of those instances, there may be tons of different views out there, but really there are two sides to it. I mean, you've got pro-choice, pro-life. There may be something in the middle I can't quite figure out is, but I'm going to concede that's probably somebody could think of something in the middle, I don't know. But that's really what it's about. And you want to give this one view and then market it as, hey, everybody that's all for pro-life, buy these plates, you can express your views right up down North Carolina in the whole and money's going to go over here to the pro-life folks and it's going to be wonderful. And then so the other side comes and says, hey, we got 300 people too, we want a plate. No, you can't have one. Your Honor, this is about North Carolina's right to speak for itself and discriminate on the basis of viewpoint if it chooses to do so. That's perfectly permissible under Johansson-Summa. Which brings up some kind, and I know these things get muddled, and I know I mixed the issues up, but in the Sons of the Confederate, I remember Judge Wilkerson in the case saying that the First Amendment is there for the minority, is really for the minority. So they wanted that little Confederate logo on the plate and they wouldn't let that logo go on the plate and the court says, oh, no, you got to put that logo up there. Because the vast majority of everybody in Virginia may not like that logo, but that's not what this is about. This is not a Confederate flag case. This is about minority rights and it's about First Amendment. So here, and again, the issue, that's why I say, I understand how we put it, and I'm going to look at it just the way you put it to me because all the courts have seen it go that way, but it's really about keeping the pro-choice people from getting a plate. Your Honor, I respectfully disagree. And the question becomes, can you do that? Which seems to be the question in the Sons of the Confederate, can you do that? Can you prohibit them from having their plate? Are you violating their First Amendment rights? And Your Honor, I respectfully disagree that that's the issue. This isn't about- Well, I know it's not the issue put forth and I know it's not the issue I've seen in cases. I agree with you on that, but I'm just, but tell me why you think, when you tell me if North Carolina, these are the people who are bringing the action, it's the people who that other plate. They didn't say, they didn't come in and say, no, we don't want you to have the pro-life one. They didn't say that. They said, we want our plate. So the issue is really not your plate. In other words, they can say, oh yeah, you're entitled to yours, but I'm entitled to mine. Your Honor, that would distort North Carolina's chosen message of pro-life if they were to allow that plate. North Carolina's entitled to speak on- Distort it? You only got two sides, pro-life, pro-choice. Nothing distorted. You got two messages, one, one, one, one, one of the others. I mean, they're not, they're not confusing anyone. You've got individuals who want to have that on their car and individuals who don't want to have that car and they've got to look at this pro-life message riding up down the road, but they have no opportunity to put a license plate on their car. That's correct, Your Honor. North Carolina is entitled to deny that plate because it conflicts with their chosen message of pro-life and I see that I'm out of time. Well, before you do, I just think there is a serious opportunity for a different set of law. I don't think it's going to come from this court that would deal with an issue like this because the way this case is coming to this court is not in the usual way. What you're doing is suppressing speech that is contrary to a view. Maybe the government does have that view, but the question is, can you do it? Even when it's marketed for individuals, it's troubling, I think. Mr. Brooke? Good morning. May it please the court. Chris Brooke, counsel for Plaintiff Appellees. The state bills its specialty license plates as an opportunity for individuals in North Carolina to promote them. Johan now says it's all control and right in his speech. If we buy that, then the ball game is over, isn't it? Literal speaker does not matter. Your Honor, there is no one-factor test that was pronounced. As is in Johan, says it specifically overruled Rose, unless my ears were not hearing that correctly. Then Sumer comes along and says, reinforces that when courts try to go a different way, they come around and say, oh, yes, it's individual. Your Honor, we would just respectfully disagree with the state in regards to their position on the . . . Tell me where it's wrong. Where is the language in Johan not as she said it is? I asked specifically for the language in Johan, and I want to know, where is it that is not there? She says it's there. First and foremost, there's never any statement that they are adopting or pronouncing a one-factor test that controls every circumstance. In fact, the court in Johan's looks at other factors that show up in the Fourth Circuit's four-factor test. For example, they discuss the government-set programmatic purpose involved in Johan's, and the programmatic purpose in that case was advancing the image and desirability of beef and beef products. So just as the Fourth Circuit has done with their four-factor test, they've not just looked at control. They've also looked at what the programmatic purpose is, Your Honor. In addition, the Fourth Circuit, subsequent to Johan's, has continued to apply its four-factor test. Most persuasively, perhaps, Justice Sandra O'Connor, who was in the Johan's majority, was on a panel by designation in the Turner case and continued to apply the four-factor test without citing to the Johan's case. Clearly, she saw no fundamental conflict between those two tests. But even if Johan's is applicable, and we argue that it is not, Your Honor, but they also looked at the fact that the government in that case controlled the dissemination of the message. They decided our message is going to be beef, it's what's for dinner, and then they controlled the dissemination of that message. What type of case is Johan's? It's a compelled subsidy case, Your Honor. What type of case is this? It's a viewpoint discrimination case. They could not factually... Is there a difference? Absolutely, Your Honor. In that case, the harm that was being alleged by the plaintiffs was a lack of transparency by the government. The government didn't bear hug their beef, it's what's for dinner message. In this case, the harm is the fact that the state has said that we're going to open a case, we're going to open a case, we're going to open a case, we're going to open a case to promote themselves and their causes, but wait, if you have a view that disagrees with us on this unbelievably divisive and profoundly controversial political matter, then you're not welcome in that forum. And that is textbook viewpoint discrimination, and goes to the heart of what the First Amendment is trying to protect, which is protecting against the government prescribing an orthodoxy on politics. What is your issue here? Is your issue that the state of North Carolina will not allow you a, I'll use the generic term, pro-choice plate, or is it that the state of North Carolina is allowing a pro-life? There's nothing wrong, per se, with the state of North Carolina offering a choose life license plate. The problem here is they've chosen to offer that plate without offering the plaintiffs the opportunity to express their opinion, such as trust women, respect choice, the other viewpoint in a profoundly controversial political matter. And, you know, going back to even if Johans does it, Johans focuses on whether the government controls dissemination as the Page case interpreted Johans here in the Fourth Circuit. And that could not be further. So you're saying the government can put forth private speech that has viewpoint discrimination if it allows the other view to be expressed? If the government is speaking and does not operate a forum where they encourage private individuals to promote themselves and their causes, then the government certainly could, you know, can speak in a non-garbled fashion. That's what the government speech doctrine says. But that is not what is happening here. What is happening here is that the state of North Carolina has said, come into this forum, promote yourself and your causes, show off your special interests. These are their words describing what they are doing via their specialty license plates. And then they've decided, but no, we won't allow both sides of a political controversy. And they don't control the dissemination of that message. They, you know, the Choose Life license plates are never produced, let alone do they end up on any car in North Carolina until 300 North Carolinians apply and pay an additional $25 to be able to put these plates on their car as the state. Why would you buy one of these plates anyway? You know, the state of North Carolina, unlike Virginia, you can put anything on the front of a car. You know that? Yeah. You only need one license plate, one on the back. And what's on the front can be anything in the world. And I have, for example, a UNC plate because I'm a double tar heel on the front of my car. But here, so those who wish to put pro-life can put a big pro choice or pro-life plate right on the front of the car and ride for days. Absolutely. The complaint is that it's not on the official plate and not on the back of the car. That's right, Your Honor. When the government opens up a forum and encourages speech, they cannot then say only one side of profound political controversies, you know, is able to speak through this forum. The point that you're making about the front of the car is also illustrative from the standpoint of the reason I have a UNC plate on the front of the car is because I'm a double tar heel. I'm speaking. I'm telling folks that I support the University of North Carolina. I'm doing the same thing, you know. North Carolinians are doing the same thing when they purchase a Choose Life license plate, when they spend 25 extra dollars, when they put forward an application, when they put that on their car. All of that has to happen 300 times before North Carolina ever creates a plate. There are states with Choose Life plates. I thought I read like 29 or so. Yes, Your Honor. Do they all permit the pro-choice plates too? Your Honor, I'm not aware. I don't believe that that is in the record. Oftentimes, the other circuits who have dealt with this case have actually dealt with suits from the other side of this controversy. The Choose Life of Illinois case was a pro-life group objecting to being excluded from the specialty license plate form, the Stanton case in the Ninth Circuit. Is that the same case here? It's exactly the same case. It's really the state of North Carolina should be arguing, or at least it seems to me, not so much that you've allowed, except it comes in ancillary that they did do it as evidence. The real issue is they're not allowing pro-choice plates. This case is only in the most peripheral fashion about abortion. It's only in the most peripheral fashion about abortion. The reason it's about abortion is because the Choose Life plates are what led to this litigation. But the legal issue and the legal principle is exactly the same if the North Carolina legislature had passed a trust women or pro-choice license plate and then on five separate occasions, as was the case here with the North Carolina legislature, rejected a Choose Life license plate. I would imagine that with that slightly different posture, but the exact same legal issue, the exact same viewpoint discrimination, you'd have another case in front of you, perhaps being brought by me as well. The legal issue is at bottom the same, just regardless of which shoe the foot is on in that particular instance. So they're inextricably attaching themselves to this particular phraseology or this particular position through their license plate number and identification, just as if they had pro-choice George Russell written on the bottom of it or pro-choice George Russell or pro-choice written on the bottom of it. Is that what you're suggesting? And so it would be adopting this message by choice, correct? You're speaking of individuals who, for example, yes, absolutely, Your Honor. And the Woolly Click case first speaks to the fact that there is an association between the driver and owner and the license plate that is on his or her car. The Sons of Confederate Veterans case picks that up, as does the Rose case, and highlights that there is a connection. And, you know, the Woolly- The same as if the person went to the Home Depot and picked up a license plate cover which said, I love guns, and then attach it to the back of their vehicle and their license plate, having that particular license plate affiliated or license plate number affiliated with it, just like if it were their name sitting back in the license plate. Yes, Your Honor. Or if they went to the Home Depot and picked up a Choose Life bumper sticker. It's the exact same private, expressive activity that is going in and that the state now admits is part of the Choose Life plate. But if it were a government bumper sticker that was manufactured that put on the back, then that might be argued that it was a government promotion. But that's precisely why we're here. But again, you know, if we have this instance, taking your hypothetical, Your Honor, where somebody's driving to the Home Depot and forking over $5 to get any bumper sticker, regardless of its origin, there clearly is some private, expressive activity that's occurring in me getting up on a Saturday morning and driving to Home Depot and forking over that $5 to be able to get that. Placing it on your personal property. Exactly, Your Honor. And displayed in public. Exactly, Your Honor. And the stamp comparison that the court makes, you know, in a footnote in Woolly, the Supreme Court notes that there is a, you know, a real special connection between messages that are on cars and the vehicle owner. There's going to be some association there. And they say that, for example, messages on currency, there's less of a personal connection because it changes hands so easily, which is not the case, you know, with cars, you  I think stamps much more analogize in that circumstance to currency as opposed to a message that is on your car. So I think that there absolutely is a private, expressive activity that is resulting in these messages being sent. The Fourth Circuit has, you know, since the Sons of Confederate Veterans case, had a durable yet flexible four-factor test for determining whether speech is private, governmental, or hybrid. It was first applied in Sons of Confederate Veterans. It was applied in the substantially similar Rose case, really pretty much on all fours with the current controversy. It's been applied on multiple occasions. I referenced the Turner case that Justice O'Connor wrote previously, but also the Musgrave case, subsequent to Johan's. So there's been no acceptance by the Fourth Circuit of this argument that Johan's does what the state claims it does, that it sort of creates a new control test. And I think the reason, and in addition to the Fourth Circuit, the majority of our sister circuits that have confronted these issues have continued to apply the four-factor test, subsequent to Johan's. The Seventh, Eighth, and Ninth Circuits have all applied the four-factor test, not found Johan's to be in conflict with the four-factor test, subsequent to that ruling. And more generally, the First, Fifth, Seventh, Eighth, Ninth, and Eleventh Circuits have all found that specialty license plates have some private, expressive component to them. So the vast majority of circuits that have weighed this issue, even subsequent to Johan's, have found that this is not purely governmental speech, and therefore viewpoint discrimination is impermissible. Do you agree it's a hybrid? Your Honor, I think that based on the precedent and based on just a good faith analysis of the facts, it is hybrid speech. There's no dispute that it's hybrid speech. No, I think it's hybrid speech. I think private speech components predominate in this situation because I think there is a private purpose, which is to promote yourself and your causes. I think that the literal speaker at bottom is the owner of that automobile, and I think ultimate responsibility lies with the individual who forks over that $35. And again, ultimate responsibility, this plate is only produced when 300 North Carolinians fork over that $25. North Carolina is not producing these plates. They're waiting for North Carolinians to tell them to produce these plates. So I think when you look at the four-factor test, at least three of the factors point towards private. It wasn't clear in the record, so these North Carolinians promote this particular piece of language, this language that would go on the plate, correct? . . . . . . Could you ask me that again one more time, Your Honor? . . . They produce the . . . They actually craft the words pro-life, propose it, and then it's accepted by the legislature. Is that correct? My understanding of the facts of this particular matter is that the organization that is dedicated nationwide to getting a Choose Life license plate, as Judge Winn referenced previously, went to the legislature, lobbied the legislature, and then the legislature adopted this Choose Life license plate. But it originated through a private application. A private entity or citizen, not a government entity, created the words pro-choice, so to speak. I think that it originated via private lobbying. Clearly, I think the reason that this is hybrid speech is that there was a legislative enactment that occurred here. So the government was involved in some way, shape, or form. But again, ultimate responsibility, literal speaker, programmatic purpose, those all point to private speech. So I think it's hybrid speech with private features predominating. Do you accept that editorial control is probably leaning toward the governmental speech area? Yes, Your Honor. Every specialty license plate that North Carolina allows, they have veto power over. However, as Your Honor referenced previously, if we're going to make veto power alone, the test, in limited public forums such as this, then that can have not only be a subterfuge for viewpoint discrimination, but it could very easily lead to prior restraint, very easily lead to censorship. In this case, it's led to the legislature telling North Carolinians who support choice to go home. In other circumstances, it's led to the exact opposite result in this particular debate. But that's a very dangerous precedent to embrace when we just look to the government and whether they're exercising veto control to determine whether the government is speaking. Would it be limited just to the fact that if you allow pro-choice, now you don't have a problem, or are there other viewpoints that would now be forced upon North Carolina to also allow a plate for? I think what the Sons of Confederate Veterans case stands for at bottom is that viewpoint neutrality in specialty license plates applies equally to divisive messages. There could not be a more divisive message than the Confederate flag appearing on a governmental license plate. And the North Carolina specialty license plate has a plate where you can get the Confederate flag on it as well. But at bottom, as you referenced previously and as Judge Wilkinson said in the consideration of the Sons of Confederate Veterans matter, the First Amendment is for every North Carolinian as an individual. So even if viewpoint neutrality results in uncomfortable divisive messages, when the come into our forum to promote yourself and your causes, then the First Amendment, which Citizens United reminded us, was premised on a mistrust of governmental power. And you know that- Just real quick, just so I understand, how is the analysis different, for instance, in Sons of Confederate where the entity is seeking to get the government to do this, put this on the plate, as opposed to where the government is seeking to put it on the plate and the individual, there's an entity coming up saying, no, you can't put it on the plate. I don't think that it is different. As was referenced previously, there was sort of a private initiating lobbying step that occurred here as well. So there's not a fine line that occurs here. But even in sort of the generally approved civic plates in North Carolina, there's still the same veto power that the state has over all specialty license plates. And every plate is susceptible to that 300 application requirement. So there's a very subtle difference in how there's legislative authorization and how it occurs. But there's much more that binds these together. The only way a Sons of Confederate Veterans plate got on a car was via an application by 300 individuals in North Carolina that's the same for these Choose Life plates. You have to pay the same amount. So the slight distinctions are far overweighed by the reality that these are- So if you allow a viewpoint, in this instance, the pro-life, in order to do that, you have to allow the neutrals. You have to allow the other viewpoint. Yes, Your Honor. And in instances, take Sons of Confederate with the flag. There are other viewpoints, but they're not as defined as just being anti-flag. There are all kinds of viewpoints. What would be the limitation once you allow a viewpoint of what then falls in that category? Do we have to litigate that every time? Or how does that come up? Well, I think that you have to allow- The First Amendment stands at bottom for the fact that you have to have viewpoint neutrality when the government opens up a form. There are viewpoint-neutral restrictions that North Carolina has. Your Honor, I see that my time has- You can finish the answer to his question. Thank you, Your Honor. There are viewpoint-neutral restrictions that are perfectly constitutional that North Carolina and other states that operate these forms have adopted. That 300 application requirement is a perfectly constitutional, perfectly viewpoint-neutral restriction that I would contend is the reason that we haven't had a lot of left-field examples sort of flooding the forum, Your Honor. For those reasons, we would argue that the Fourth Circuit should affirm the district court ruling and joining the state from allowing access to its specialty license plate from to only one side of the abortion debate. Thank you, Your Honor. Ms. Hathcock, you have some time in reply. Thank you, Your Honor. I just wanted to make a few points. First of all, there was just some discussion about the purpose of the specialty plate program in North Carolina. If you look at page 105 of the Joint Appendix, this is the ACLU's proposed order on summary judgment to Judge Fox. And the ACLU admits in its proposed order that the purpose of the program is for the state of North Carolina to express a pro-life viewpoint and that that factor does, in fact, weigh in favor of the government. Also, all of the cases that the ACLU cited from sister circuits are pre-SUMMUM. They all came before SUMMUM clarified the government speech doctrine in 2009, with the exception of Roche from the, I believe it was the Eighth Circuit. And even in Roche, the issues were briefed and argued before the SUMMUM opinion. And that opinion in Roche was published one month after the Supreme Court's opinion in SUMMUM. First of all, also, there's been some discussion about forum in this case. And the Supreme Court has made clear that forum principles apply where the government has opened a government-sponsored program or property for the expression of speech where it can accommodate a large number of speakers. But the forum principles will not be applied where the government's message would become garbled or distorted. And that's what would happen here. Judge Fox has held that North Carolina has discriminated on the basis of viewpoint. And the question becomes, where will this end? Is North Carolina going to have to also approve plates that say, kill the sea turtles or let the Cape Hatteras lighthouse fall into the ocean or burn the Great Smoky Mountains? There's no limit here for the speech that North Carolina would have to allow. The pro-choice viewpoint in this case is not the viewpoint that North Carolina chooses to express, and it does conflict with North Carolina's chosen message of choose life. And under Planned Parenthood v. Casey, North Carolina is entitled to favor child birth over abortion, just like any other state. The district court doesn't take into account specialty plate programs like Arizona that have a purely ministerial procedure for approving specialty plates, and states like North Carolina where the legislature retains full and complete control over every aspect of the specialty plate process. He doesn't distinguish between the two. And there's a very constitutionally significant difference between those types of specialty plate programs. Here, North Carolina adopts specialty plates to advance its own message. It accepts messages from third parties and promulgates that speech as part of its overall message. And the fact that North Carolina allows third parties to propose certain speech doesn't change this into a forum requiring viewpoint neutrality. North Carolina has not created a forum in this case. Like private speakers, North Carolina is entitled to speak for itself and select the views that it wishes to express and shape its expression by commenting on one subject while remaining silent on others. And the state would respectfully request that this court reverse the order of the district court granting summary judgment to the plaintiffs and dissolve the permanent injunction in this case. Thank you. Okay, thank you. I'll ask the clerk to adjourn court. Then we'll come down and greet counsel. If the class that we're going to talk to afterwards wants to, you can, after everyone's left, you want to move up and take these seats around here so it makes it easier to communicate, be fine to do so. Okay, if you would please adjourn court. This honorable court stands adjourned until tomorrow morning at 9 30. God save the United States and this honorable court.
judges: William B. Traxler Jr., James A. Wynn, Jr., George L. Russell III